**SEALED**

**FILED**
2011 MAY 18 PM 4: 37
CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CRIMINAL NO. **A11CR 292 LY** |
| ) | |
| TODD OLLENDORFF, ) | |
| Defendant. ) | |

## FACTUAL BASIS

Had this matter proceeded to trial, the United States Attorney for the Western District of Texas was prepared to prove the following facts beyond a reasonable doubt:

Todd Ollendorff resided in the Austin, Texas and the Los Angeles, California areas. Amy Allen resided in the Bastrop, Texas area. Marcus Saenz resided in the Manor, Texas area. HCI was located outside the State of Texas. Todd Ollendorff and Amy Allen both earned money as real estate professionals in and around the Austin, Texas area. Ollendorff owned and operated his own mortgage company. After the company failed in early 2005, Ollendorff went to work for a different mortgage brokerage company. Amy Allen's real estate business activity was developing short sales on foreclosed real estate properties. Allen met Saenz through her real estate dealings.

Ollendorff and Allen decided to start an investment business together. On or about December 28, 2005, Allen filed organizational documents in the State of Delaware for WF USA LLC ("WF USA"). WF USA was created by Allen as an investment company to which Ollendorff, Allen, and others would profit. Allen was responsible for handling most of the WF USA's banking transactions and created a business account for WF USA at Wells Fargo Bank in Texas on or about December 28, 2005. The account was opened with a $100 deposit. The purpose of this account was to receive and disburse money from investor clients of WF USA. Allen was also responsible for

solicitation of investors, negotiation, and the drafting of contracts. Ollendorff was responsible for solicitation of investors, negotiation, and reviewing contracts.

On or about December 29, 2000, Marcus Saenz created Saenz Investments as an investment company to handle investments. On or about July 7, 2004, Saenz created a bank account at JP Morgan Chase ("Chase") in the name of Saenz Investments. On or about March 27, 2006, Saenz opened an account at Independent Bank under the name of Saenz Investments. Saenz used both of these bank accounts to handle funds invested by clients.

On or about November 21, 2005, HCI was created. HCI had bank accounts at Wells Fargo Bank, Bank of America, and Chase Bank (formerly know as Washington Mutual) to handle their investor funds.

Saenz Investments and HCI were two clients of WF USA. During 2005, Amy Allen and Todd Ollendorff approached Saenz regarding the investment in midterm notes through Allen and Ollendorff's company, WF USA. Allen explained the midterm notes would yield a 100% monthly return. However, Allen needed a large sum on money for participation in the investment. Saenz was to obtain investors for Allen and Ollendorff. During 2005, HCI was approached regarding the same type of brokering deal.

As a result of Allen and Ollendorff's representation on the amount of return, Saenz Investments and HCI recruited investors and received funds for these investments. After receiving investor funds, Saenz Investments and HCI would forward the invested funds, or at least a portion of the investor funds, from their business accounts to WF USA or more specifically Ollendorff and Allen. The deposits into the WF USA Wells Fargo Account, account number XXX-XXXX757 ("WF USA's account"), comprised these investor funds.

In Joy Marketing, LLC, Property Management ("In Joy") was already operating when WF USA was created by Ollendorff and Allen. In Joy had an existing Wells Fargo Bank account, account number XXX-XXXX751 ("In Joy's account"). Prior to February 9, 2006, In Joy was used by Allen for her non-WF USA activity. By on or about February 9, 2006, Allen and Ollendorff began using In Joy's account, account XXX-XXXX751 as a secondary account to WF USA's Wells Fargo account, account XXX-XXXX757.

From approximately February 2006 through June 2006, the main source of deposits to In Joy's account was from WF USA's. More specifically, at least $1,011,184.58 of the estimated $1,163,126.41 deposited into In Joy Marketing's account during this time frame was from WF USA. In summary, because all of the money deposited into the WF USA's account contained investor funds, the ultimate source of the deposits and withdrawals from In Joy's account were the investor funds from WF USA.

The investors intended for their money to be invested in Stand by Letters of Credit ("SBLC"), foreign currency exchange, European Mid-term Notes ("MTNs") and/or other investments. However, Ollendorff and Allen transferred some of the money from WF USA's account to In Joy's account without the investors' permission. With the exception of $202,500, Ollendorff and Allen did not invest the In Joy money as promised, but used the money to pay other "expenses." Ollendorff and Allen failed to disclose to their investors of this appropriation.

Furthermore on or about January 11, 2006 and prior to sending any money from WF USA for investment purposes, Ollendorff and Allen took money from WF USA's account and made payments to other investors from prior investment schemes. This is commonly referred to as a Ponzi

scheme. The total figure of payment from WF USA's account to investors from prior investment schemes is $104,663.82.

Bank records reflect that Ollendorff and Allen never received any interest income payments for their alleged investments from WF USA. (The only repayment made to WF USA for the benefit of Ollendorff, Allen, and others was on or about April 13, 2006 for a $220,000 "commission" payment.) Even though Ollendorff and Allen had not received any other payments for WF USA investments, they continued to accept and send additional investor funds. In addition, bank records reflect that WF USA and /or In Joy as directed by Ollendorff and Allen also made payments to their investors in order to continue and promote the scheme as well as to maintain the operation of the investment scheme. These payments to WF USA's clients did not only provide the appearance of successful investments, they also generated additional investor funds. HCI was one of the WF USA clients that received these payments.

Prior to on or about May 31, 2006, Ollendorff and HCI discussed HCI's need for money to continue operation. Since HCI provided a substantial amount of investment funds for WF USA, HCI was crucial to Ollendorff and Allen's scheme. If HCI remained in business, WF USA potentially could gather additional investment funds. On or about May 31, 2006, Ollendorff caused the Coordinating Manager of HCI, residing outside the State of Texas, to send an e-mail from his Yahoo account to Emiliana Allen, residing in Texas. The e-mail stated the Coordinating Manager had spoken to Todd Ollendorff and came up with a minimal amount for a temporary loan to cover pending obligations for HCI. The amount requested in the e-mail was $46,000.

In order to promote the continued operations, Ollendorff and Allen sent payments to HCI. On or about June 6, 2006, Allen in conjunction with Ollendorff wire transferred $30,000.00 from In Joy's Wells Fargo Bank Account XXX-XXX7751, located in Texas, to HCI's Wells Fargo Account XXX-XXX0723, located outside the State of Texas. On or about June 9, 2006, Allen wire transferred $16,000.00 from In Joy's Wells Fargo Bank Account XXX-XXX7751 located in Texas, to HCI's Wells Fargo Bank Account XXX-XXX0723, located outside the State of Texas. These wire transfers provided additional funds to HCI, thereby promoting the investment scheme and allowed HCI to obtain additional investor funds.

Ollendorff and Allen knew they had not received any return from alleged investment sources aside from the $220,000 on or about April 13, 2006. Therefore, the money Ollendorff and Allen sent to HCI was previous investor funds. Ollendorff and Allen never disclosed such disbursement to their investors.

The promotion of the said scheme is evidenced by the fact that soon after the funds were sent to HCI, WF USA received 4 transfers comprised of new investor funds from HCI. The four transfers are outlined below:

On or about June 20, 2006, HCI wire transferred $100,000 from HCI, Washington Mutual (Chase) account number XXX-XXX1038, located outside the State of Texas, to WF USA LLC, Wells Fargo Bank account number XXX-XXX6757, located in Texas.

On or about June 20, 2006, HCI transferred $100,000 from HCI, Wells Fargo Bank account number XXX-XXX0723, located outside the State of Texas, to WF USA LLC, Wells Fargo Bank account number XXX-XXX6757, located in Texas.

On or about June 20, 2006, HCI transferred $100,000 from HCI, Wells Fargo Bank account

number XXX-XXX0723, located outside the State of Texas, to WF USA LLC, Wells Fargo Bank account number XXX-XXX6757, located in Texas.

On or about June 21, 2006, HCI wire transferred $350,000 from HCI, Wells Fargo Bank account number XXX-XXX0723, located outside the State of Texas, to WF USA LLC, Wells Fargo Bank account number XXX-XXX6757, located in Texas.

Other investors in WF USA were:

| Investors | (Initials only) | Date | Amount |
|---|---|---|---|
| ST |  | 1/23-2/28/06 | $2,200,000 |
| TDB |  | 1/13-6/21/06 | $65,000 |
| AAF |  | 2/21/06 | $10,000 |
| GHG |  | 3/17/06-5/5/06 | $212,036.55 |
| WA |  | 1/13/06-6/21/06 | $40,000 |
| PB |  | 5/4/06 | $63,000 |
| PAC |  | 1/17/06 | $8,000 |
| RAH |  | 1/17/06-8/01/06 | $55,000 |
| GPW |  | 1/13/06-2/8/06 | $18,000 |
| SI |  | 4/20/06-6/21/06 | $2,200,000 |
| HCI |  | 12/30/05-6/21/06 | $2,733,000 |

The amount of fraud or the amount collect by WF USA in this scheme is approximately $7,604,562. Of the $7,6604,562 collected, a net of approximately $5,400,000 were sent to other entities to include TBG/VP, SS and G II. Restitution owed, joint and several, is $6,520,713.

6

That in summary would be the evidence presented by the United States.

                                      Respectfully submitted,

                                      JOHN E. MURPHY  
                                      UNITED STATES ATTORNEY

By:                                  /s/ Michelle E. Fernald  
                                      MICHELLE E. FERNALD  
                                      Assistant U.S. Attorney  
                                      816 Congress Avenue, Suite. 1000  
                                      Austin, Texas  78701  
                                      Telephone  (512) 916-5858  
                                      Facsimile   (512) 916-5854  
                                      State Bar No. 00796075

I, Todd Ollendorff, have carefully read and reviewed the foregoing Factual Basis in its entirety and have discussed it with my attorneys. I freely and voluntarily admit that the statements contained in the Factual Basis are true and correct and accurately describe the facts and circumstances of the offense to which I am pleading guilty. In addition, I freely and voluntarily admit that the allegations contained in Count One of the Information are true and correct and that I am guilty of that charge.

_____          3/9/11
Todd Ollendorff                          Date
Defendant

_____          3/11/2011
David Botsford                           Date
Attorney for Defendant